## NEW YORK, NEW HAVEN & HARTFORD RAIL-ROAD CO. *v.* NOTHNAGLE ET AL.

No. 525.   Argued April 29, 1953.—Decided June 8, 1953.

*Thomas J. O'Sullivan* argued the cause for petitioner. With him on the brief was *Edwin H. Hall.*

*John A. Danaher* argued the cause and filed a brief for Mrs. George Nothnagle, respondent.

*Edward M. Reidy* filed a brief for the Interstate Commerce Commission, as *amicus curiae,* urging affirmance.

MR. JUSTICE CLARK delivered the opinion of the Court.

This case concerns the extent of an interstate carrier's liability for a passenger's baggage loss. On October 5, 1949, Mrs. Nothnagle, respondent here, purchased a railway ticket from petitioner in Meriden, Connecticut, for a journey to Fall River, Massachusetts, via New Haven, Connecticut. She boarded a train in Meriden at 11:19 a. m. and arrived shortly after 11:30 a. m. in New Haven where she alighted for transfer to another train. On the station platform her suitcase was solicited by a redcap employee of petitioner, and she handed it to him with orders to return it at the Fall River train departing at 12:40 p. m. No baggage check was given; no money was paid. The suitcase vanished, and respondent sued. At trial in the Meriden City Court the parties stipulated that the baggage and contents actually worth $615 were lost due to petitioner's negligence. Petitioner insisted, however, that its liability as an interstate carrier was governed by a tariff schedule filed with the Interstate Commerce Commission which limited a recovery for baggage loss to $25 unless the passenger had in writing declared a higher valuation.

The state courts granted full recovery to respondent. The trial court found that although respondent had not declared a greater value, she had neither actual knowledge

of petitioner's asserted restriction nor was notified of its existence by a legend on a baggage receipt or posted signs. In any event, the court concluded, petitioner had accepted the baggage only "for safe-keeping and not for transportation," so that the parties' rights were determinable by Connecticut principles of bailments rather than any rule of federal law.[1] The Connecticut Supreme Court of Errors affirmed, viewing respondent's journey from Meriden to Fall River as not "continuous," and "suspended for a substantial time in New Haven" to be resumed only when she boarded the Fall River train.[2] Accordingly, that court deemed the case governed by Connecticut law under which petitioner was held liable for $615.[3] Petitioner claims that this decision impairs federal rights secured by the Interstate Commerce Act, and we granted certiorari to examine the scope of that statutory protection. 345 U. S. 903.

We have little doubt that the transaction was incident to an interstate journey within the ambit of the Interstate Commerce Act. Neither continuity of interstate movement nor isolated segments of the trip can be decisive. "The actual facts govern. For this purpose, the destination intended by the passenger when he begins his journey and known to the carrier, determines the character of the commerce." *Sprout* v. *South Bend,* 277 U. S. 163, 168 (1928). And see *Baltimore & Ohio S. W. R. Co.* v. *Settle,* 260 U. S. 166, 171 (1922); *Galveston, H. & S. A. R. Co.* v. *Woodbury,* 254 U. S. 357 (1920). In this case respondent undertook a journey from Connecticut to Massachusetts, with a temporary stopover for transfer along the way. And it goes unchallenged here that the redcap to whom she entrusted her baggage was a railroad

---

[1] R. 7–9. The decision of the Meriden City Court is not reported.

[2] 139 Conn. 278, 282, 93 A. 2d 165, 167 (1952).

[3] 139 Conn., at 283, 93 A. 2d, at 167.

employee performing functions, whether viewed as services in connection with an interrupted through trip from Meriden to Fall River or with the second unquestionably interstate leg of respondent's journey, incident to interstate travel and reached by the terms of the Interstate Commerce Act. Cf. *Williams* v. *Jacksonville Terminal Co.*, 315 U. S. 386, 394, 397 (1942); *Stopher* v. *Cincinnati Union Terminal Co.*, 246 I. C. C. 41 (1941).[4] The Interstate Commerce Act, therefore, must control to whatever extent its provisions apply.

With the enactment in 1906 of the Carmack Amendment, Congress superseded diverse state laws with a nationally uniform policy governing interstate carriers' liability for property loss. *E. g., Adams Express Co.* v. *Croninger,* 226 U. S. 491, 504–505 (1913); *Kansas City S. R. Co.* v. *Carl,* 227 U. S. 639, 648–649 (1913). Insofar as now pertinent that enactment provided that any interstate railroad "receiving property for transportation . . . shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it . . . , and no contract, receipt, rule, or regulation shall exempt such . . . railroad . . . from the liability hereby imposed."[5] In 1915 Congress fortified the Carmack Amendment by adding, in part, that "any such limitation, without respect to the manner or form in which it is sought to be made is hereby declared to be unlawful and void."[6] One year

---

[4] Neither here nor in *Williams* was the Commission's ruling in the *Stopher* case challenged.

[5] 34 Stat. 595, 49 U. S. C. § 20 (11).

[6] 38 Stat. 1197, 49 U. S. C. § 20 (11). The 1915 amendment was qualified by the following proviso: *"Provided, however,* That if the goods are hidden from view by wrapping, boxing, or other means, and the carrier is not notified as to the character of the goods, the carrier may require the shipper to specifically state in writing the value of the goods, and the carrier shall not be liable beyond the

later, however, a proviso qualified that prohibition by rendering it inapplicable "first, to baggage carried on passenger trains . . . , or trains . . . carrying passengers; second, to property . . . received for transportation concerning which the carrier shall have been or shall hereafter be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released . . . ." [7]

---

amount so specifically stated, in which case the Interstate Commerce Commission may establish and maintain rates for transportation, dependent upon the value of the property shipped as specifically stated in writing by the shipper." The object of the legislation was the imposition of full liability on carriers except (1) "where the property shipped is hidden from view by wrapping, [so] that the representation as to value made by the shipper [should] in all cases be binding upon him"; (2) where the Interstate Commerce Commission authorizes rates based upon value as represented by the shipper, in which case the carrier's liability is limited to the represented value. S. Rep. No. 407, 63d Cong., 2d Sess., p. 3; H. R. Rep. No. 1341, 63d Cong., 3d Sess., p. 2. The Commission held the first exception applicable to transportation of passenger baggage and recognized carriers' right to promulgate pertinent terms and conditions dependent on passengers' declared valuations. *In re The Cummins Amendment*, 33 I. C. C. 682, 696–697 (1915). In the following year, Congress in effect overruled that determination. See note 7, *infra*.

[7] 39 Stat. 442, 49 U. S. C. § 20 (11). The Committee Report accompanying the 1916 legislation observed in reference to the 1915 proviso: "The construction put upon the proviso by the Interstate Commerce Commission has resulted in some vexatious requirements insisted upon by carriers and in some injustice. For instance, it has been held by the commission that under the proviso the carrier may compel the shipper to state the value of the goods tendered for shipment and that if the true value is not stated the shipper is liable

We assume that petitioner's tariff was properly filed pursuant to a lawful authorization by the Interstate Commerce Commission. In *Stopher* v. *Cincinnati Union Terminal Co.*, 246 I. C. C. 41, 44–47 (1941), the Commission determined that an interstate railroad's redcap services constituted railroad transportation as defined by the Act, and directed that a tariff covering service charges be filed.[8] See also *Dayton Union R. Co. Tariff for Redcap Service*, 256 I. C. C. 289 (1943); *Redcap Service, Cincinnati, Columbus, Indianapolis*, 277 I. C. C. 427 (1950). Petitioner railroad participated in filing New England Joint Tariff RC No. 3–N with the Commission. Cf. *American Railway Express Co.* v. *Lindenburg*, 260 U. S. 584, 588–589 (1923). In addition to listing a schedule of charges per piece and truckload of baggage, that tariff de-

---

to criminal prosecution under section 10 of the act to regulate commerce. The committee does not agree with the commission in the interpretation so placed upon the proviso, but there is no way in which to remedy the matter except to make the intent of Congress so clear that it is impossible to misunderstand it. Further, the commission has held that *baggage carried on passenger trains upon the ticket of a passenger* is within the terms of the law. Whether this construction is correct or incorrect, it is palpable that *baggage so transported on a passenger fare* ought not to be subject to the rule which controls ordinary freight, and in the bill now reported it is excepted in express terms." Congress eliminated the 1915 proviso, therefore, and explained the aim of the 1916 legislation "to restore the law of full liability as it existed prior to the Carmack amendment of 1906, so that when property is lost or damaged in the course of transportation under such circumstances as to make the carrier liable recovery is had for full value or on the basis of full value. From this general rule there is excepted, first, baggage carried on passenger trains. This is done for obvious reasons. Second, other property . . . , with respect to which the Interstate Commerce Commission has fixed or authorized affirmatively a rate dependent upon value, either an agreed or a released value." (Emphasis added.) S. Rep. No. 394, 64th Cong., 1st Sess., p. 2.

[8] See 49 U. S. C. §§ 1 (1), 1 (3), 1 (5) (a), 6 (1).

clares that "Carriers will not accept a greater liability than Twenty-five (25) Dollars per bag or parcel . . . handled by Red Caps under the provisions of this tariff, unless a greater value is declared in writing by the passenger. If a greater value is so declared in writing by the passenger, an additional charge of Ten (10) Cents per bag or parcel will be made for each One Hundred (100) Dollars or fraction thereof above Twenty-five (25) Dollars so declared. Any bag or parcel which is declared by the passenger to have a value in excess of Five Hundred (500) Dollars will not be accepted for handling by Red Caps under the provisions of this tariff."

Clearly that limitation of liability is voided by the Act unless saved by the statutory proviso. *Adams Express Co.* v. *Darden,* 265 U. S. 265 (1924); *Chicago, M. & St. P. R. Co.* v. *McCaull-Dinsmore Co.,* 253 U. S. 97 (1920). The excepted "baggage carried on passenger trains" refers solely to free baggage checked through on a passenger fare. See, *e. g., Boston & Maine R. Co.* v. *Hooker,* 233 U. S. 97, 117 (1914).[9] It cannot apply to redcap service for which the carrier exacts a separate charge because the cost of providing that facility is not an element in the determination of passenger rates. *Redcap Service, Cincinnati, Columbus, Indianapolis,* 277 I. C. C. 427, 436 (1950).[10] The limitation must therefore qualify under

---

[9] Cf. 49 U. S. C. § 22, referring to "free baggage" carried on passenger tickets. See also notes 7, *supra,* and 10, *infra.*

[10] That distinction has long been recognized by the Commission. *National Baggage Committee* v. *Atchison, T. & S. F. R. Co.,* 32 I. C. C. 152 (1914); *In re The Cummins Amendment,* 33 I. C. C. 682, 696 (1915); *Ellison-White Chautauqua System* v. *Director General,* 68 I. C. C. 492, 495 (1922). In fact, only recently the Commission disallowed a proposed tariff of charges for passenger baggage because of "the long and universally established practice of permitting a reasonable amount of a passenger's baggage, whether in the baggage

the proviso as part of an authorized schedule of rates graduated according to property valuations *in writing.* Petitioner's tariff on its face does not deviate from the statutory standard, and it may be read as complying with the law. Cf. *American Railway Express Co.* v. *Lindenburg, supra; Cincinnati, N. O. & T. P. R. Co.* v. *Rankin,* 241 U. S. 319, 327 (1916).

But the facts here do not bring the case within the statutory conditions. There was no "value declared in writing by the shipper or agreed upon in writing"; in fact, not even a baggage check reciting a limitation provision changed hands.[11] Moreover, the actual value of respondent's baggage exceeded $500; the tariff itself deems such highly valued property unacceptable for handling by redcaps. But only by granting its customers a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge can a carrier lawfully limit recovery to an amount less than the actual loss sustained. *Boston & Maine R. Co.* v. *Piper,* 246 U. S. 439, 444–445 (1918); *Union Pacific R. Co.* v. *Burke,* 255 U. S. 317, 321–323 (1921); cf. *The Ansaldo San Giorgio I* v. *Rheinstrom Bros. Co.,* 294 U. S. 494, 497–498 (1935). Binding respondent by a limitation which she had no reasonable opportunity to discover

car or in his personal possession, to be carried as a part of the passenger-fare contract, and the apparently uniform sanction of such a practice by the courts and the regulatory bodies." *Service Charges for Checking Baggage,* 288 I. C. C. 691, 695 (1953).

[11] See *Caten* v. *Salt City Movers & Storage Co.,* 149 F. 2d 428, 432 (1945). We need not now consider whether an inscribed baggage receipt would constitute a sufficient writing to satisfy the statute, compare *American Railway Express Co.* v. *Lindenburg,* 260 U. S. 584, 590–591 (1923), or whether a carrier's refusal to handle property above a certain value is permissible at all.

would effectively deprive her of the requisite choice; [12] such an arrangement would amount to a forbidden attempt to exonerate a carrier from the consequences of its own negligent acts. *Ibid.;* cf. *Watson Bros. Transp. Co.* v. *Feinberg Co.,* 193 F. 2d 283, 286 (1951). "The great object of the law governing common carriers was to secure the utmost care in the rendering of a service of the highest importance to the community. A carrier who stipulates not to be bound to the exercise of care and diligence 'seeks to put off the *essential duties* of his employment.' It is recognized that the carrier and the individual customer are not on an equal footing. 'The latter cannot afford to higgle or stand out and seek redress in the courts.' " *Sante Fe, P. & P. R. Co.* v. *Grant Bros. Construction Co.,* 228 U. S. 177, 184–185 (1913). In sum, respondent cannot be held bound by petitioner's limitation, and the judgment of the Connecticut Supreme Court of Errors must be

*Affirmed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

---

[12] *Boston & Maine R. Co.* v. *Hooker,* 233 U. S. 97 (1914), and *New York Central R. Co.* v. *Beaham,* 242 U. S. 148 (1916), cannot control this case. Neither decision involved the Act as amended by the 1915 and 1916 legislation; both dealt with free baggage checked through on a passenger ticket; the carrier in both cases had supplied some notice of its limitation of liability. In *Galveston, H. & S. A. R. Co.* v. *Woodbury,* 254 U. S. 357 (1920), the sole issue raised or considered related to the interstate nature of the passenger's journey.