Melvin C. BERKMAN, Jae Manufacturing Jewelers, Inc. and A. & I. Kaplan Co., Inc., Plaintiffs,

v.

TRANS WORLD AIRLINES, INC., Defendant.

United States District Court
S. D. New York.

Nov. 2, 1962.

Kelly, Donovan, Robinson & Maloof, New York City, for plaintiffs; Henry J. Robinson, Jr., New York City, of counsel.

Bigham, Englar, Jones & Houston, New York City, for defendant; John L. Conners, New York City, of counsel.

TYLER, District Judge.

Plaintiffs move under Rule 12(f), F.R. Civ.P., to strike certain matter from defendant's ("TWA") answer; defendant cross-moves for summary judgment pursuant to Rule 56.

Plaintiffs seek to recover for the value of certain jewelry which they allege that they, as owners, delivered into the custody of defendant airlines and which has not been returned to them.

Neither the moving papers nor the remarks of counsel upon oral argument indicated any dispute as to the controlling facts, which follow:

On August 3, 1961 plaintiff Berkman purchased at New York City an air ticket from United Air Lines, Inc. This ticket gave passage from New York, N. Y., to Portland, Oregon, via St. Louis, Missouri, Kansas City, Missouri, and Denver, Colorado. There was specified on the ticket a departure time, flight number, and carrying airline for each leg of the journey.

The trip was scheduled to commence in New York City on September 5 and terminate in Portland, Oregon, on September 7, 1961.

Plaintiff Berkman flew the route, as scheduled, except for a substitution of airline and flight number on the St. Louis to Kansas City leg. (This substitution was due to a revision of schedule effective subsequent to the issuance by United of the original ticket on August 3.)

In the course of this trip, on September 6 in St. Louis, Missouri, plaintiff Berkman deposited with TWA two pieces of baggage some fifteen minutes prior to boarding defendant's flight #209 from St. Louis to Kansas City. Concededly, he did not indicate or declare a special or higher value for his luggage or its contents. The baggage was checked through, as the claim checks indicate, to Kansas City, where it was to be claimed by Berkman. One of the bags, asserted to contain a substantial quantity of jewelry, was not returned to him when he sought to claim it upon his arrival in Kansas City; it has never been returned to him or the other plaintiffs.

Plaintiffs claim damages of $57,089.40, the alleged true value of the missing jewelry.

■ TWA contends that its liability, if any, is controlled by the terms of its local and joint passenger rules under Tariff No. PR 4, filed with the Civil Aeronautics Board pursuant to § 1373 of the Federal Aviation Act, 49 U.S.C. 1301 et seq. In particular, TWA asserts as controlling either an exclusionary rule (Rule 70(c)) [1] or, in the alternative, a rule limiting its liability (Rule 71) [2].

Plaintiffs, not attacking the general validity and effect of these rules in any respect, argue that they are inapplicable to the case at bar in that the flight on which the lost baggage had been checked was purely intra-state and that, therefore, the tariff filed with the Civil Aeronautics Board has no application.

■ It is established that Congress may employ its authority under the Constitution to control, in the national interest, activities which may appear at first blush to be purely intra-state and as such without the domain of federal power. Colorado v. United States, 271 U.S. 153, 46 S.Ct. 452, 70 L.Ed. 878 (1926). The essential question raised by the parties here is whether the Congress has so exercised its authority in the provisions of the Federal Aviation Act and in the rules and regulations thereby authorized.

In urging the intra-state character of TWA's undertaking to transport the lost jewelry, plaintiffs point out that the baggage was given into the custody of defendant at St. Louis, Missouri, just prior to the departure of intra-state flight

---

1. " * * * TW [Trans World Airlines] * * * are not liable for loss, damage to, or delay in the delivery of * * * jewelry * * * which are included in the passenger's checked baggage, whether with or without the knowledge of carrier."

2. "The liability, if any, of all participating carriers for the loss of, damage to, or delay in the delivery of any personal property, including baggage * * * shall be limited to * * * $250 when * * * TW [Trans World Airlines] * * * is responsible for the loss, damage or delay * * * unless the passenger * * * has declared a higher value * * * ".

#209; that, pursuant to the terms of the bailment, the baggage was sought to be reclaimed at the terminus of flight #209, Kansas City, Missouri; and that the excess baggage rate charged by TWA for this luggage was based on only the mileage between St. Louis and Kansas City.

In essence, then, plaintiffs argue that the engagement of the parties with respect to the bailment of luggage on the St. Louis to Kansas City flight constituted a contract separate and distinct from that contract for inter-state passage entered into between United Air Lines, Inc. and plaintiff Berkman on August 3.

It would be an interesting exercise to analyze the series of transactions involved in this case from the point of view of the common law of contracts. But this would be irrelevant to the real issue, which is the effect, upon the facts of this case, of the Federal Aviation Act and the tariff rules filed thereunder.

The Act is intended to be a comprehensive scheme for regulating inter-state air travel in this country. The Act declares that one of its aims is to "foster sound economic conditions in * * * [inter-state air transportation] and to improve the relations between, and coordinate transportation by, air carriers". 49 U.S.C. § 1302(b).

Pursuant to § 1373 of the Act, defendant has filed a tariff with the Civil Aeronautics Board, which tariff sets forth many terms and conditions of its air service; these terms and conditions govern the rights and liabilities between the airlines and its passengers. See Lichten v. Eastern Airlines, Inc., 189 F. 2d 939, 25 A.L.R.2d 1337 (2d Cir., 1951).

Tariff No. PR 4 clearly contemplates transportation by means of interconnecting carriers and regulates such routings in some detail. See, e. g., Rules 27, 28, 67.

The last mentioned, Rule 67, governs the checking of baggage. It provides, in effect, that where a passenger is travelling on inter-connecting flights, he may specify the point in the routing at which he will claim baggage bailed with the carrier at an earlier point in the routing. Rule 67(e). Thus, separate transactions involving a passenger's baggage, in the course of a routing, are contemplated by the Rules. That the baggage thus treated is nonetheless governed by the Rules is illustrated by the facts of this case: the excess baggage weight surcharge paid by plaintiff Berkman for the St. Louis to Kansas City flight was itself determined under Rules 68 and 69.

The Supreme Court of the United States faced a similar problem of construction in New York, N. H. and H. Ry. v. Nothnagle, 346 U.S. 128, 73 S.Ct. 986, 97 L.Ed. 1500 (1952). There, a railroad passenger travelling from Meriden, Connecticut, to Fall River, Massachusetts, upon arrival in New Haven railway terminal, had checked her baggage with a porter, instructing him to return it to her some twelve hours later when she was to resume her journey. Finding that plaintiff's transaction with the porter was governed by the Interstate Commerce Act, the Court stated: " * * * the destination intended by the passenger when he begins his journey and known to the carrier, determines the character of the commerce. (citations omitted)." Nothnagle, supra, at p. 130, 73 S.Ct. at p. 987. See, also, Galveston, Harrisburg and San Antonio Ry. v. Woodbury, 254 U. S. 357, 41 S.Ct. 114, 65 L.Ed. 301 (1920).

The scope and language of the Federal Aviation Act and the above cited Rules filed thereunder compel the conclusion that the transaction in the case at bar falls within the ambit of federal regulation. Flight #209 from St. Louis to Kansas City was, for plaintiff Berkman, so clearly a portion of an inter-state journey, that it would work a travesty upon the federal regulation of inter-state air travel to find that the rights of plaintiff Berkman as a passenger on Flight #209, with respect both to his person and to his baggage, were not determined by appropriate provisions of the Federal Aviation Act.

In this view of the case, plaintiffs' motion to strike from the answer all defenses based upon and references to the Act

and the applicable tariff thereunder must be denied. Moreover, since tariff Rule 70(c) relieves defendant of any liability for loss of the jewelry as alleged, defendant's motion for summary judgment is granted. Settle order.