SID SILVERS AND SHIRLEE SILVERS, PLAINTIFFS-APPEL-
LANTS, v. PENNSYLVANIA RAILROAD COMPANY, A
CORPORATION, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Heard October 25, 1965—Decided December 17, 1965.

Before Judges GAULKIN, LABRECQUE and BROWN.

*Mr. Hilton Goldman* argued the cause for appellant (*Messrs. Krowen, D'Amico & Chernin,* attorneys).

*Mr. James C. Orr* argued the cause for respondent (*Messrs. Lum, Biunno & Tompkins,* attorneys; *Mr. A. Marvin Cherin,* on the brief).

The opinion of the court was delivered by
LABRECQUE, J. A. D. Plaintiffs appeal from the amount of a judgment entered in the Essex County District Court in their favor for loss of certain baggage entrusted to a red cap porter employed by defendant Pennsylvania Railroad Company.

On January 5, 1961 plaintiffs arrived at the Pennsylvania Station, Newark, en route to Florida. They had with them nine pieces of luggage which a red cap porter unloaded directly from the trunk of their car onto a cart. The red cap delivered a baggage ticket for each bag and the fees for the service were paid.

When the baggage was delivered to plaintiffs' compartment on the "Florida Special" only seven of the nine pieces could be found. The two missing pieces were never returned and presumably stolen.

At the trial defendant stipulated that it was liable for the loss. The question for determination was whether the liability of defendant extended to the full value of the items lost or whether it was limited to $50 per bag. Plaintiffs contend that the missing bags contained, among other things, a camera and a sapphire ring and that they had a value in excess of $1,000. Defendant has stipulated that their value was $1,000, but contends that its liability is limited to $50 per bag.

Defendant bases its claim of limited liability upon Interstate Commerce Commission Released Rates Order No. 1159 and Local and Joint Passenger Tariff R. C. No. 19 (ICC No. 218) dated April 5, 1957 and entitled, "Charges, Rules and Regulations for the Handling of Passengers' Hand Baggage and Other Personal Effects by Station Porters ('Red Caps')." In effect, it provides that a carrier's liability shall not exceed $50 for each article of hand baggage or personal effects unless the owner completes an "Excess Value Declaration" and pays an additional charge of 20 cents per $100 of value per bag or fraction thereof above the 35-cent minimum charge, with a limit of $500 maximum insurable.

Order No. 1159 required the carrier to have printed on each baggage check a notice of limitation of liability and to post signs to that effect in a form prescribed by the order in no less than two conspicuous places in the terminal. Defendant established that the claim checks issued to Mr. Silvers bore the legend:

"IT IS AGREED THAT THE CARRIER'S LIABILITY IS LIMITED TO NOT MORE THAN $50.00 FOR THE ARTICLE OF HAND BAGGAGE OR OTHER PERSONAL EFFECTS, INCLUDING CONTENTS COVERED BY THIS RECEIPT UNLESS A GREATER VALUE IS DECLARED IN WRITING ON FORM PROVIDED FOR THAT PURPOSE. PLEASE SEE REVERSE SIDE."

There was also proof that three of the signs required by the regulation had been posted in defendant's Newark station, two on the side walls of the baggage room and one in the information booth in the center of the main waiting room. The trial judge determined that the regulation had been complied with and that the limitation of liability provision precluded recovery by plaintiffs beyond the sum of $50 per bag. The judgment for $100 followed and plaintiffs appeal.

■ The question here involved is whether defendant, by promulgating the tariffs, posting the notices and wording its baggage checks in the manner referred to, effectively limited the extent of its liability for the loss of plaintiffs' baggage,

notwithstanding plaintiffs' lack of actual knowledge of such limitation. We hold that it did.

The transaction in question is governed by the Carmack Amendment of 1906 to the Interstate Commerce Act, 34 *Stat.* 593 (1906), as amended, 49 *U. S. C. A.* § 20(11). The applicable portion thereof provides:

"Any common carrier * * * receiving property for transportation from a point in one State * * * to a point in another State * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it * * * and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier * * * from the liability imposed; and any such common carrier * * * so receiving property * * * shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it * * * notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is declared to be unlawful and void * * * *Provided, however,* That the provisions hereof respecting liability for full actual loss, damage, or injury, notwithstanding any limitation of liability or recovery or representation or agreement or release as to value, and declaring any such limitation to be unlawful and void, shall not apply, first, to baggage carried on passenger trains or boats, or trains or boats carrying passengers; second, to property, except ordinary livestock, received for transportation concerning which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released * * * *."

■ By virtue of the Interstate Commerce Act, as amended, federal law is made applicable to interstate travel "to the exclusion of the power of the states to control in such respect by their own policy or legislation." *Boston & M. R. Co. v. Hooker,* 233 *U. S.* 97, 110, 34 *S. Ct.* 526, 528, 58 *L. Ed.* 868, 875

(1914). As was said in *Adams Express Co. v. Croninger*, 226 *U. S.* 491, 33 *S. Ct.* 148, 57 *L. Ed.* 314, 320 (1913):

"That the legislation supersedes all the regulations and policies of a particular state upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue, and limits his power to exempt himself by rule, regulation, or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it." (226 *U. S.*, at *pp.* 505–506, 33 *S. Ct.*, at *p.* 152)

Such has been the construction accorded the statute by our own courts. *Olivit Bros. v. Penna. R. R. Co.*, 88 *N. J. L.* 241, 243 (*E. & A.* 1916). See also *Spada v. Penna. R. R. Co.*, 86 *N. J. L.* 187, 189 (*E. & A.* 1914). Compare *Silvestri v. South Orange Storage Corp.*, 14 *N. J. Super.* 205, 210 (*App. Div.* 1951).

Defendant having secured an order, as required by the act as amended, which approved its tariff limiting liability in the case of baggage entrusted to station porters, it remains to be determined whether the tariff in question precluded recovery by plaintiffs of the full amount of their loss. They rely principally upon *New York, N. H. & H. R. Co. v. Nothnagle*, 346 *U. S.* 128, 73 *S. Ct.* 986, 97 *L. Ed.* 1500 (1953), as supporting their contention that the limitation does not apply. We find it to be inapposite.

Prior to the decision in *Nothnagle* it was uniformly held that where tariffs were required to be filed with the Interstate Commerce Commission, their filing was constructive notice to the world, binding all shippers irrespective of their lack of specific knowledge of the contents thereof. *Kansas City S. R. v. Carl.* 227 *U. S.* 639, 652, 33 *S. Ct.* 391, 57 *L. Ed.* 683, 688 (1913). See also *Boston & M. R. Co. v. Hooker, supra,* 233 *U. S.*, at *p.* 113, 34 *S. Ct.* 526; *New York C. & H. R. R. Co. v. Beaham,* 242 *U. S.* 148, 37 *S. Ct.* 43, 61 *L. Ed.* 210 (1916); *Adams Exp. Co. v. Croninger, supra*; *Spada v. Penna. R. R. Co., supra,* 86 *N. J. L.*, at *p.* 190.

The provisions of the Carmack Amendment which authorized limitations of liability were incorporated into the act in 1916. As noted above, they covered (1) baggage carried on passenger trains and (2) property as to which the carrier was expressly authorized by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing, as the released value of the property. *Nothnagle, supra,* 346 *U. S.,* at *pp.* 131–132, *73 S. Ct. 986.* Defendant contends that its tariff was filed under the second proviso. Compare *O'Brien v. Pennsylvania Railroad Company,* 184 *F. Supp.* 305 (*S. D. N. Y.* 1960).

In *Nothnagle* the passenger held a ticket for passage from Meriden, Connecticut, to Fall River, Massachusetts. Upon being required to change trains at New Haven, she gave her suitcase to a red cap, instructing him to place it on the Fall River train on which she was later to continue her journey. She received no baggage check and paid no fee. When the suitcase was found to have vanished, she sued. The railroad defended on the basis of a tariff schedule filed with the Interstate Commerce Commission which limited recovery for baggage loss to $25 unless a higher value had been declared in writing. Plaintiff was, nevertheless, awarded a verdict in the state court for the full amount of her loss, $615. On *certiorari,* the Supreme Court affirmed. It held that the first proviso contained in the 1916 amendment did not apply and that the limitation of liability sought to be enforced could only be justified under the second. As to the effect of the latter, it held:

"But the facts here do not bring the case within the statutory conditions. There was no 'value declared in writing by the shipper or agreed upon in writing'; in fact, not even a baggage check reciting a limitation provision changed hands. Moreover, the actual value of respondent's baggage exceeded $500; the tariff itself deems such highly valued property unacceptable for handling by redcaps. But only by granting its customers a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge can a carrier lawfully limit recovery to an amount less than the actual loss sustained."

In view of the result reached, the court found no necessity to consider whether an inscribed baggage receipt would constitute a sufficient writing to satisfy the statute. See note 11, 73 *S. Ct.*, at *p.* 990, 97 *L. Ed.*, at *p.* 1507.

*Lebkeucher v. Pennsylvania Railroad Co.*, 97 *N. J. L.* 112 (*Sup. Ct.* 1922), affirmed o.b. 98 *N. J. L.* 271 (*E. & A.* 1922), is likewise not apposite in that there was no proof of adoption of a tariff such as the one here, and the opinion was restricted to consideration of the common law of bailments as applied to the leaving of a bag in the railroad parcel room at the completion of the passenger's journey.

We accordingly hold that, by the approval and filing of the tariff in question, the posting of the notices referred to, and the issuance of a baggage check directing attention to the limitation and affording the passenger an opportunity of declaring a higher value, defendant's liability to the plaintiffs herein was limited to $50 for each article of hand baggage entrusted to the care of its employee, regardless of whether plaintiffs actually read the legend on the checks or observed the signs. *Cray v. Pennsylvania Greyhound Lines*, 177 *Pa. Super.* 275, 110 *A.* 2d 892 (*Super. Ct.* 1955); *Zeidenberg v. Greyhound Lines, Inc.*, 3 *Conn. Cir.* 176, 209 *A.* 2d 697 (*Cir. Ct.* 1965); *Leask v. New York Central R. R.*, 42 *Misc.* 2d 310, 247 *N. Y. S.* 2d 913 (*Sup. Ct.* 1964). See also *Twentieth Century D. Serv. v. St. Paul Fire & M. Ins. Co.*, 242 *F.* 2d 292 (9 *Cir.* 1957). Compare *Mitchell v. Union Pacific Railroad Co.*, 242 *F.* 2d 598 (9 *Cir.* 1957).

We find no merit to the remaining points raised. We note, additionally, that plaintiffs' Point II was not raised below. *Roberts Elec. Inc. v. Foundations and Excavations, Inc.*, 5 *N. J.* 426, 429 (1950).

Affirmed.