859 F.2d 149
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
DEXEL SYSTEMS CORPORATION OF WASHINGTON, DC, Plaintiff-Appellee,
v.
NOVA EXPRESS, INC., Defendant-Appellant,
and
Burnham Service Co., Inc., Burnham Service Corporation, Defendants.
 No. 87-2651.
 United States Court of Appeals, Fourth Circuit.
 Argued July 5, 1988.
Decided Sept. 16, 1988.
 
 John Niebrugge Romans (G. Anthony Hylton, Curtis, Mallet-Prevost, Colt & Mosle, Nicholas H. Cobbs, John J. Tigert VI, Tigert Law Offices on brief) for appellant.
 Charles McDonnell Radigan (Barham, Radigan & Manning, Steven W. Bancroft, Lewis, Tydings, Bryan, Trichilo & Stock on brief) for appellee.
 Before HARRISON L. WINTER, Chief Judge, and MURNAGHAN and SPROUSE, Circuit Judges.
 HARRISON L. WINTER, Chief Judge:
 
 
 1
 Nova Express, Inc. (Nova) appeals from the district court's judgment in a nonjury trial awarding plaintiff Dexel Systems Corp. (Dexel) damages in the amount of $58,870.69, plus interest and costs, for damage done to equipment Dexel was shipping via Nova to a customer. Nova contests the district court's holding that Nova had not properly limited its liability according to provisions in the bill of lading because the shipper, Dexel, did not have actual or constructive knowledge of the purported limitation. We affirm the district court's judgment.
 
 I.
 
 2
 Before the district court, the parties stipulated that Nova, an air freight forwarder, agreed to arrange for carriage of two pieces of computer equipment, and that this shipment sustained $58,870.69 in damages while in Nova's possession. They stipulated that Dexel's regular shipper, Burnham Services Corp. (Burnham), which was also warehouseman for the equipment, was unable to meet the customer's next-day deadline for delivery in Ionia, Michigan, and that Dexel therefore arranged for Burnham to turn the computer equipment over to Nova for carriage on the last leg of the delivery route. Specifically, Dexel planed for Burnham to ship the equipment from Maryland to Cincinnati, Ohio, and for Nova to ship the equipment from Cincinnati to Ionia.
 
 
 3
 Nova contracted for the shipping from Ohio to the final destination in Michigan to be performed by an Ohio trucking company, which in turn delivered the shipment to a local trucker. As the parties stipulated, the customer, upon visual examination of the equipment, refused delivery because of obvious damage.
 
 
 4
 Nova presented evidence that when it received the shipment in good condition from Burnham, it presented a bill of lading to Burnham which contained an express limitation on liability. However, the parties stipulated that Dexel did not actually receive or see a bill of lading for the computer equipment's transit until discovery in the instant proceedings. Dexel also adduced evidence that a Burnham employee refused to sign Nova's proffered bill of lading at the time possession of the equipment was transferred in Cincinnati.
 
 
 5
 At trial, there was uncontroverted testimony that when Dexel contacted Nova, neither party mentioned a limitation on liability. The district court found "there was no discussion as to limitation of liability, no mention of the insurance or any questions of value." Nova presented evidence that in the few previous shipments Nova had delivered for Dexel, Dexel had received a bill of lading setting forth a limitation of liability in the amount of $.50 per pound. Nova employes testified that they assumed that Dexel was aware of the provisions of Nova's bill of lading, in light of Dexel's general experience with shippers and Dexel's prior dealings with Nova. The parties stipulated that for a number of years Dexel had not signed a declaration of value or reviewed a bill of lading before turning over a shipment to Burnham for carriage.
 
 
 6
 The district court found, after hearing evidence that Dexel had only very limited prior experience with Nova as a carrier, that "there is no showing that there was any prior knowledge on the part of the plaintiff that there could be expected to be any kind of limitation of liability involved here, either from prior knowledge of dealings with the defendant company or by knowledge from industry standards."
 
 II.
 
 7
 On appeal, Nova contends that the district court erred in failing to limit its liability to $.50 per pound. It relies upon the declared value doctrine, an established doctrine of federal law which permits a common carrier to limit its liability to the agreed value of the goods. This doctrine abridged the rule at common law that public policy forbade contracts of carriage where the carrier sought to exculpate itself from liability for its own negligence. Public policy, however, did permit a limitation of liability by agreement between the parties as to the value of the shipped goods where the charge for transportation was dependent on the good's value. See generally First Pennsylvania Bank, N.A. v. Eastern Airlines, Inc., 731 F.2d 1113, 1115-17 (3 Cir.1984) (overview of doctrine's origins and rationale). In order to limit the amount of its liability under federal law, a carrier must set forth a limitation on liability and the shipper must be afforded the opportunity to increase the carrier's liability for damages by declaring a higher value for the shipper's goods and paying an accordingly higher price for their carriage. See Hart v. Pennsylvania R.R., 112 U.S. 331, 340 (1884). "[O]nly by granting its customers a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge can a carrier lawfully limit recovery to an amount less than the actual loss sustained." New York, N.H. & H.R.R. v. Nothnagle, 346 U.S. 128, 135 (1953).
 
 
 8
 Nova argues that Dexel should have known, based on a sales meeting Nova conducted for Dexel some months before the shipment in question, that Nova had a $.50 per pound limitation clause in its bill of lading. Dexel employee Christine Carter testified that the limitation clause was not discussed, and the district court's decision to believe her testimony, of course, may not be disturbed on appeal.
 
 
 9
 Nova further contends that because Burnham transferred the goods to it in Cincinnati, either Burnham was acting under Nova's limitation of liability or under its own limitation of liability clause. Burnham's refusal to sign Nova's bill of lading does not logically compel the conclusion that Burnham's limitation as to liability remained in effect. Another alternative, one the district court did not clearly err in choosing, is that the goods were transferred without limitation as to carrier liability.
 
 
 10
 Nova also argues that Dexel should have known about the limitations clause in its bill of lading based on prior business transactions, whether or not Dexel in fact had actual knowledge of the limitations. We disagree. We perceive no error on the district court's part in applying the declared value doctrine in the instant case. The doctrine requires that Dexel be given a fair opportunity to chose between higher or lower liability, and this requirement cannot be met by infrequent prior dealings, even if they somehow amounted to constructive knowledge of the limitations clause. The district court's finding that Nova could have and did not prepare a bill of lading for review by Dexel is not clearly erroneous and directly implies that Dexel was not given an opportunity to declare a higher value as required for limited liability. The district court's finding that Dexel did not have prior knowledge of the limitation is also not clearly erroneous, given evidence in the record of Dexel's limited prior experience with Nova. In particular, evidence that Burnham routinely limited liability without such formalities is not a sufficient basis to disturb the district court's findings. Burnham was a trucking company which had worked with Dexel for a number of years, while Nova was an air freight forwarder which had not routinely carried goods on behalf of Dexel. In light of this distinction and evidence of variances in practice among different carriers, the district court did not clearly err in its finding that Dexel was not informed of the limitations clause and given a fair opportunity to declare a higher value.
 
 
 11
 Other aspects of Nova's challenges to the district court's decision amount to the assertion that if Dexel had been given a fair opportunity to declare a higher value for its shipment, it would have declined and accepted Nova's limitation on liability. Even if Nova were correct, this would not be a sufficient legal basis for us to disturb the district court's judgment. As the Third Circuit has said, there must be a bona fide alternative to the limitation on liability, First Pennsylvania Bank, 731 F.2d at 1117. As a logical implication of the district court's finding that Dexel did not know of the limitations clause, Dexel was not given such an opportunity.
 
 
 12
 AFFIRMED.
 
 MURNAGHAN, Circuit Judge, dissenting:
 
 13
 Accepted prudent practice recommends meticulous application of earlier authority, particularly in a common law commercial area where uniformity and stability are especially to be desired. The majority has carefully examined the declared value doctrine and its application by the district court in the present case, and determined that Nova's liability limitation is unenforceable because Dexel did not have notice of the limitation. I find no fault in the majority's treatment of the case in that respect, particularly because we are constrained to apply the "clearly erroneous" standard when evaluating the district court's factual findings as to the lack of actual notice.
 
 
 14
 The majority opinion, however, fails to consider whether Dexel, as a sophisticated shipper, should be presumed as a matter of law to have constructive notice of Nova's liability limitation because such limitations are virtually universal in the industry. The district court found that Dexel is not a "sophisticated shipper"; I consider that factual finding clearly erroneous, as Dexel ships computer equipment to customers as a regular and integral part of its business. If Dexel is not a sophisticated shipper, then the term is essentially meaningless. I would charge Dexel with knowledge of the liability limitation and enforce Nova's customary limit. I therefore dissent.
 
 
 15
 Dexel Systems Corp. engaged in a business of filling orders from customers for products of the International Business Machines Corporation (IBM). To fill an order, Dexel customarily purchased the equipment from IBM and arranged for its shipment and delivery to the customer. The sales in 1986 approximated 1300 in number to customers throughout the United States.
 
 
 16
 One carrier often employed by Dexel for this purpose was Burnham Service Company, Inc. ("Burnham"). A Burnham affiliate, Burnham Service Corporation, operated a Washington, D.C. warehouse in which it received IBM equipment and released it on Dexel's instructions to a carrier designated by Dexel, either Burnham or another carrier chosen by the customer.
 
 
 17
 The shipment involved here was arranged at the last minute. A customer in Ionia, Michigan notified Dexel on a Friday that it needed delivery on the next day (Saturday). Burnham was unable to complete delivery under that deadline. Dexel then called Nova Express, a carrier that had been used by Dexel on at least two or three prior occasions, on the telephone to arrange transport. Burnham transported the shipment to a warehouse in Cincinnati, Ohio, and there released the shipment to Nova Express for transport to Ionia.
 
 
 18
 Ordinarily, a bill of lading documenting a Nova shipment would be prepared by the shipper (here, Dexel) on a Nova airbill form. Dexel's need for urgent overnight delivery made that impractical. Nova's agent prepared a Nova bill of lading and attempted to give it to a Burnham representative in Cincinnati. The Burnham representative refused to sign the Nova bill of lading, but rather gave the Nova agent a copy of the Burnham bill of lading.
 
 
 19
 It was a universal custom, at least of Nova and Burnham, to include in the bill of lading a limitation of liability. Burnham's standard limit in case of damage was $5.00 per pound; Nova's standard limit was $.50 per pound. Judicial notice may be taken of the fact that it is customary for carriers to impose such limitations. It is now definitely the rule, rather than the exception, that the carrier will only cover, i.e., personally take the risk of damage or loss, at a standard valuation. The carrier almost without exception will apply a standard limitation of liability, with carrier liability increased only after payment of a higher rate by a shipper who regards and declares the property transported as worth more than the standard valuation. In addition, testimony below indicated that Nova's $.50 limit was consistent with the industry standard for air freight forwarders. In any event, the Burnham and Nova bills exchanged by their representatives each contained such a limitation of liability. Dexel's practice was to leave preparation of bills of lading to Burnham; Dexel received only invoice copies, used for record keeping, after shipment.
 
 
 20
 The inevitable unfortunate misadventure occurred during carriage by Nova to Ionia, Michigan. The product shipped was badly damaged in the total amount of $58,870.69. Applying its standard limit, Nova admittedly was liable for $827.50. Dexel collected $20,000 under an all-risk insurance policy separately maintained by it for each and every shipment made by Dexel. Such all-risk insurance is available at rates much cheaper than coverage in excess of the standard limit made available on an individual shipment basis by a carrier, and Dexel testified that it was its customary practice not to buy insurance from any carrier for a shipment value in excess of the carrier's standard limitation, and that Dexel relied instead upon the all-risk insurance.[1] Dexel like the shipper in Mechanical Technology Inc. v. Ryder Truck Lines, 776 F.2d 1085 (2d Cir.1985):
 
 
 21
 effectively selected the lowest freight rate and its corresponding low level of liability. Having had the opportunity on its own form to secure greater protection, [the shipper] "cannot complain about the consequences of leaving the appliable spaces blank...."
 
 
 22
 Id. at 1087 (quoting W.C. Smith, Inc. v. Yellow Freight Sys., Inc., 596 F.Supp. 515, 517 (E.D.Pa.1983)).
 
 
 23
 Turning to the particular facts of this case, Burnham regularly applied a standard valuation limitation insofar as any potential loss in shipment was concerned. Dexel was fully aware of Burnham's standard limitation. Dexel knew, or should have known, of the general carrier industry practice of insisting on a limitation of liability. Nova Express was not an unknown quantity to Dexel, for it had used Nova on several prior occasions and the carrier had regularly insisted on a limitation of liability. Dexel retained Nova's services by telephone.
 
 
 24
 Dexel was responsible for creating a situation where, in view of the urgency involved, for reasons of moment to the shipper and its customer, and not to the carrier, there was no time to delay transporting the goods while Dexel's written consent to a limitation of liability was obtained. As things developed, Nova had, indeed, only one encounter with anyone to whom it could provide a copy of the bill of lading covering the portion of the shipment from Ohio to Ionia, Michigan. The bill of lading so submitted contained a limitation of liability. Under the circumstances of this case, it is impossible to escape the conclusion that Dexel, knowing of common industry practice, nevertheless clearly and consistently opted to carry independent all-risk insurance and to proceed without purchasing from the carrier insurance protection for a value above the standard rate applicable.[2] Cessante ratione legis cessat et ipsa lex. The limitation of liability should apply, and, therefore, the judgment for Dexel should be reversed and the case dismissed.
 
 
 25
 Accordingly, I respectfully dissent.
 
 
 
 [1]
 Dexel indicated that the ultimate cost of carriage was ultimately charged to, and hence borne by, the individual customer, so there was no reason for Dexel to attempt to achieve savings by not purchasing the excess coverage charged by the carrier. However, that position, while perhaps true in any single case, overlooks the fact that receipt of a higher charge because excess coverage was taken "unnecessarily" in the great bulk of cases could well disaffect a cost-conscious customer, so it was in Dexel's interest to minimize carriage cost as much as possible
 
 
 [2]
 "There must be a bona fide alternative enabling the shipper to declare a higher valuation upon paying a higher rate, in order for the carrier to limit its liability to the released value at the lower rate." First Pennsylvania Bank v. Eastern Airlines, Inc., 731 F.2d 1113, 1117 (3d Cir.1984). Unlike the majority, because Dexel is a sophisticated shipper I believe Dexel had the requisite opportunity to declare a higher value. It is unjust to spring additional unexpected liability on Nova