**TOKIO MARINE AND FIRE INSURANCE CO., LTD., et al., Plaintiffs,**

**v.**

**AMATO MOTORS, INC., et al., Defendants.**

**No. 90 C 4823.**

United States District Court, N.D. Illinois, E.D.

May 20, 1991.

---

**116**

Dennis Minichello, James D. Reinfranck, Keck, Mahin & Cate, Chicago, Ill., for plaintiffs.

Karen M. Cichowski, Condon & Cook, Chicago, Ill., for Amato Motors, Inc.

George T. Brugess, Chicago, Ill., for Chicago North Western.

Donald C. Shine, Christopher P. Koback, Nisen & Elliott, Chicago, Ill., for Raven.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Plaintiffs Tokio Marine and Fire Insurance Co., Ltd. (Tokio Marine) and Chiyoda Fire and Marine Insurance Co., Ltd. (Chiyoda) insured a shipment of Panasonic goods for Matsushita Electric Corporation of America (Matsushita). The goods were to be shipped from Japan to Tacoma, Washington and then to Arlington Heights, Illinois. Part of the shipment never was delivered to Arlington Heights, so Tokio Marine and Chiyoda have compensated Matsushita for the missing goods, paying $472,117.41 and $38,194.00 respectively. Now the plaintiffs sue as subrogees of Matsushita to recover the amounts they paid.

According to the plaintiffs, their insured Matsushita, through its shipping agent Hub City, contracted with defendants Amato and API to transport the goods. API delivered the goods by rail from Tacoma, Washington to Chicago, Illinois. Once the goods arrived in Chicago, Amato was to transport them by truck from the C & NW railyard to the Arlington Heights warehouse. Without notifying Matsushita or Hub City, Amato subcontracted the job to defendant Raven Transport and communicated the special numbers needed to pick up the containers of goods. On the scheduled day, a Raven trailer entered the Chicago & North Western yard and the driver asked for one of the Panasonic shipments, providing the secret code number. The part of the shipment that C & NW released to this driver has not been recovered. Later in the day, four Raven trucks arrived at the C & NW yard, but only the three remaining containers could be picked up and delivered. Raven suggests that the first driver impersonated a Raven employee and stole the goods.

Plaintiffs sue under the Carmack Amendment or, alternatively, under common law claims of contract and negligence. Defendants argue that deregulation of TOFC/COFC service [1], under the Staggers Rail Act, makes them exempt from Carmack Amendment liability. In addition, they argue that the common law claims are preempted by the federal regulation over the industry.

### I.

■ The Interstate Commerce Commission deregulated TOFC and COFC ser-

---

**1.** The parties agree that the defendants provided trailer on flat car service (TOFC)/container on flat car service (COFC).

vices in 1981 (46 Fed.Reg. 14348), "pursuant to authority granted by Congress, codified at 49 U.S.C. sec. 10505 as part of the Staggers Rail Act of 1980." *Quasar Co. v. Atchison, Topeka, and Santa Fe Ry. Co.,* 632 F.Supp. 1106, 1109 (N.D.Ill.1986); *see also Co-operative Shippers v. Atchison, Topeka, and Santa Fe Ry. Co.,* 840 F.2d 447, 448 (7th Cir.1988) and *American Trucking Associations v. I.C.C.,* 656 F.2d 1115 (5th Cir.1981) (ICC's exemption of TOFC/COFC service was authorized and valid). The statute authorizing deregulation requires affected carriers to "provide contractual terms for liability and claims which are consistent with the provisions of section 11707 of this title. Nothing in this subsection or section 11707 of this title shall prevent rail carriers from offering alternative terms...." 49 U.S.C. sec. 10505(e).

Section 11707 (the Carmack Amendment) states that a common carrier is liable for the actual loss or damage to the transported goods, but may limit its liability through sec. 10730(c). 49 U.S.C. sec. 11707(a)(1), (c)(4). Section 10730(c) permits carriers to offer released value rates which limit liability if the carrier and the shipper agree in writing. "Thus, a rail carrier may limit its liability to a shipper if the carrier can satisfy the requirements of section 10730(c) and section 10505(e)." *Co-operative Shippers v. Atchison, Topeka, and Santa Fe Ry. Co.,* 840 F.2d at 449.

Some courts have found that the ICC and Congress, through the deregulation statutes and regulations on liability which refer to the deregulated services, have expressed the intention that carriers providing TOFC/COFC services remain under the jurisdiction of the Interstate Commerce Act. *See Quasar Co. v. Atchison, Topeka, and Santa Fe Ry. Co.,* 632 F.Supp. at 1109–11; *American Trucking Associations v. I.C.C.,* 656 F.2d 1115, 1124 (5th Cir.1981). Two recent Seventh Circuit decisions have been resolved on contractual terms which were held to have satisfied the Interstate Commerce Act provisions. *Co-operative Shippers v. Atchison, Topeka, and Santa Fe Ry. Co.,* 840 F.2d 447 (7th Cir.1988) (Co-op, an experienced shipper,

had opportunity to receive sec. 11707 terms but chose lower released value rate); *Yamazen U.S.A., Inc. v. Chicago and North Western Transportation Co.,* 790 F.2d 621 (7th Cir.1986) (despite option for sec. 11707 liability, Yamazen agreed to liability restrictions in return for lower rate). Unfortunately, it is not clear from those opinions if the satisfaction of the applicable liability sections removed the carriers from the Act's jurisdiction or simply fulfilled the Act's requirements for exemption from full value liability.

The present case places the Court in a rare and unfavorable position; Congress appears to have unintentionally left a tear in the fabric of the law. It is possible to read the Carmack Amendment and related ICC regulations in conjunction with the Staggers Rail Act as exempting the defendants and others similarly situated from both federal regulations and state common law. While the existence of ICC jurisdiction and regulatory power over the industry preempts liability under state common law, the deregulation of TOFC/COFC shipments in 1981 seems to release the defendants and other common carriers providing these services from Carmack Amendment liability.

Despite the plaintiffs' argument to the contrary, it is possible that the defendants have been lost in the regulating shuffle and are now technically free from liability under any theory except an equitable one. On the other hand, the defendants cite cases which explain the state and common law preemption on the basis of ICC regulation and Carmack Amendment liability. *Hughes v. United Van Lines, Inc.,* 829 F.2d 1407, 1414–15 (7th Cir.1987). Defendants have no caselaw to support their interpretation of ICC regulation, or the lack of it, in a case where the court finds deregulation and preemption have worked together to preclude liability.

The alternative claims in the complaint suggest two ways to reach liability: state common law or the Carmack Amendment. The defendants point out the problems with each and they are obligated to go no further than that. Judge Moran, in the *Qua-*

*sar* opinions, found in federal common law a way to mend the presumably inadvertent tear in the law. *Quasar Co. v. Atchison, Topeka, and Santa Fe Ry. Co.*, 632 F.Supp. 1106, 1112–13 (N.D.Ill.1986) ("To the extent that losses from a deregulated portion of interstate freight carriage would not be directly governed by statute, they would be controlled by federal common law which is drawn from the statutes.") This Court finds a third option, however, which precedes the last resort of federal common law: liability based on the violation of the Congressional statute authorizing the ICC to create exemptions (49 U.S.C. sec. 10505) and the ICC regulation granting the exemption (46 Fed.Reg. 14348, *see* 49 C.F.R. sec. 1090.2).

Amato and C & NW concede that they fall under the jurisdiction of the ICC; that very premise relieves them of common law liability under the preemption doctrine. The Court holds that those two defendants are amenable to suit under ICC regulations which require them to offer full liability terms to shippers and, if the shipper selects a released value rate instead, to reduce to writing the agreement for limited liability. In other words, they are required by the ICC to provide for contractual liability "consistent with" the Carmack Amendment terms, although they may agree in writing to reduced liability based on a reduced carriage rate. Because the Court finds that the defendants are subject to ICC juridiction, the common law alternative claims against them are dismissed as preempted by federal regulation.

## II.

█ Defendant Raven argues that it is not a common carrier subject to ICC jurisdiction by virtue of this transaction. Raven's participation involved intrastate transportation of goods. Although the goods were shipped interstate by other carriers, Raven had no role in that aspect of the shipping. In fact, Raven was not even a party to the original contract, but, as plaintiffs allege, was brought in by Amato at the last moment.

Plaintiffs cite only cases which are distinguishable in support of its claim. *New York, New Haven, & Hartford Railroad v. Nothnagle*, 346 U.S. 128, 73 S.Ct. 986, 97 L.Ed. 1500 (1953) and *Hall, Inc. v. Superior Trucking Company, Inc.*, 514 F.Supp. 581 (N.D.Ga.1981) both concern defendants that contracted to provide interstate carriage services but tried to avoid liability because the alleged injury took place during the intrastate leg of the journey. Raven's contract with Amato was to provide intrastate motor carriage services and Raven had no agreement with any other party. Plaintiffs fail to allege that defendant Raven even knew of the interstate transportation of the goods by other defendants.

The Court, however, declines to exclude Raven from common carrier status under ICC jurisdiction on the basis of the record before it. According to the complaint, the goods remained in commerce, i.e. had not reached their final destination, during the intrastate leg for which Raven was hired. The Supreme Court in *Nothnagle* held that "neither continuity of interstate movement nor isolated segments of the trip can be decisive. The actual facts govern." *New York, New Haven & Hartford Railroad Co. v. Nothnagle*, 346 U.S. 128, 130, 73 S.Ct. 986, 987–88, 97 L.Ed. 1500 (1953). At this early stage of the litigation, it would be premature to find that Raven cannot be liable as a common carrier under any reasonable set of facts. For now, Raven will be treated like the other moving defendants, subject to ICC jurisdiction. The Carmack claim is dismissed for the reasons above regarding Amato and Chicago & North Western and the negligence claim is dismissed as preempted.

## III.

The current Carmack Amendment count, Count I, is dismissed as to defendants Amato, Chicago & North Western and Raven. The Court will, however, allow repleading of the federal liability claim consistent with the dictates of this opinion.

Count II is dismissed as to Amato. Count III is dismissed as to all moving

defendants. Count IV is dismissed. These counts are dismissed with prejudice.