## NASH & WINDFOHR OIL CORPORATION et al. v. JOHNSON et al.

### No. 13149.

Court of Civil Appeals of Texas. Fort Worth.

April 12, 1935.

Rehearing Denied May 3, 1935.

Fred T. Arnold, of Graham, for appellants.
S. P. Boling, of Graham, for appellees.

LATTIMORE, Justice.

Appellees sued alleging their ownership of a pasture through which a stream ran after passing by appellants' oil well; that appellants discharged salt water and refuse oil from said well into said stream and that such conduct was negligent and that same was carried in said water course into appellees' pasture and was injurious and fatal to cattle; and that appellees had been compelled thereby to keep cattle out of their pasture and had lost the use of same for two years, which use was of the reasonable rental value of $100 per year. There was also an allegation of a cow killed thereby, which was not proven. Judgment, in a trial without a jury, was for $150, being for loss of use of the pasture for eighteen months.

There was evidence that such water was injurious to cattle, that the pasture was for that reason not used for eighteen months, and that the reasonable rental value was $100 per year.

The court allowed appellees to prove that appellants had by contract paid appellees $100 for keeping appellees' cattle out of the pasture the year before those years named in the pleading. Assuming that this evidence was not justified by the pleading and should have been excluded, we think the error is not reversible. At most, it shows an admission of liability for the previous year, which could have had no effect on the court. The only evidence of reasonable rental value was in the exact figure of the contract of the previous year and of the judgment of the court.

Appellants offered no testimony.

We must assume, if it be necessary, which we think it is not, that the court considered only the testimony properly admissible. We do not see how the court could have rendered any other judgment unless he believed that appellees were wholly mistaken in their testimony.

The judgment is affirmed.

## On Rehearing.

In regard to the insistence of counsel for appellants that we should set out the evidence that sustains the judgment, we quote the following upon the only contention of appellants that there was no evidence that cattle in the said pasture would be exposed to injury from drinking the waters of Farmers' Branch:

J. B. Foster, cattleman all his life, knows that the water in Farmers' Branch is salty, with oil on banks and a reddish sediment in the branch common to oil well water. He could testify of his own knowledge to the effect of salt water from oil wells on cattle. The effect on a cow from drinking salt water from an oil well is that they don't have much action afterward. It takes them a good while to recover. If she gets a good dose, it makes her sick, affects her bowels. "To my own knowledge it will kill them, at times."

G. I. McCallister testified that he was a cattleman of experience, and swore to facts substantially as above quoted and also that cows which had drunk such water had died and that a "scummy" substance known as oil was passed from them.

Andrew Smith, a cattleman of thirty years' experience, testified he was familiar with the water in Farmers' Branch; that he had observed a cow that had drunk it and died.

In addition thereto the record shows a great deal of testimony offered from these and other witnesses which was excluded by the trial court, apparently because no one except a veterinarian could testify as an expert on what had caused the death of a particular cow. The testimony was wrongfully excluded, for expert testimony on this subject is not confined to him who is a licensed

veterinarian, but in the affirming of the judgment we did not find it necessary to resort to that portion of the record.

■ One assignment which the motion complains of our failure to discuss refers to the following event, as shown by the record: The witness Smith, above quoted, was on the stand:

"Q. Mr. Smith, is it your opinion that the water in Farmers Branch is injurious to live stock?

"Objection.

"The court: Overruled.

"Mr. Arnold: We except.

"Q. What do you think it will do to them? A. I think it will kill them.

"Mr. Arnold: We object because the witness is not qualified.

"The court: Objection overruled."

We did not discuss the assignment because the same was of no importance.

The judgment is not for killing a cow. It is for loss of use of a pasture. There was ample evidence without the answer objected to as above quoted. The trial was before the court without a jury.

The motion for rehearing is overruled.

BROWN, Justice (dissenting).

Not being able to agree with the majority opinion, I respectfully enter a dissent.

This suit is brought on the theory of a tort being committed by appellants, in that they knowingly discharged or negligently permitted salt water and oil to flow from their well, so that it polluted a stream running through appellees' pasture lands, and that such salt water and oil rendered the waters in the stream injurious to the cattle that drank it, and killed one cow.

In the first place, there is no competent testimony showing that the drinking of such water ever caused any injury to or brought about the death of any of the cattle.

In the suit, appellees prayed for the recovery of the value of one cow alleged to have been killed by drinking the water.

After consistently sustaining every objection to the opinion testimony, offered by appellees and their several witnesses, and after declaring that in his opinion all of these witnesses were not qualified to testify to any injury by such water to cattle that drank it, the trial court finally permitted appellees' witness Andrew Smith to testify, under the following circumstances: "Q. From your examination of water in Farmers Branch, state whether or not it would injure cattle?" This was objected to and the trial court said: "I don't think any of these men are qualified. Mr. Smith are you expert enough to tell what a cow dies from when she died? Can you tell what a cow dies with when she dies?" To which the witness answered: "No, I can't." Then the trial court sustained the objection.

This was the witness who works for appellees and who was being questioned about the cow that died, and for which appellees were seeking recovery. Then appellees pressed the inquiry further, as follows:

"Q. You state that you observed milk cows after they drank salt water and oil. You state that you tasted this water in Farmers Branch and that it was salty. You have stated that there was some oil on there. Did you observe the cow after she died? A. Yes, there was oil on her dung.

"Q. You have been in the cattle business for 30 years? A. Yes.

"Q. State whether or not in your opinion that the water in Farmers Branch is injurious to cattle?"

Upon objection the trial court said: "That is the same question. That salt water might not have had the same content at all. I sustain the objection." Then appellees pressed the matter further by asking the witness: "Q. Mr. Smith, is it your opinion that the water in Farmers Branch is injurious to live stock?" Objection being made, same was overruled, and exception taken, and these further questions asked: "Q. What do you think it will do to them? A. I think it will kill them." To this the appellants objected because the witness was not shown to be qualified, the objection was overruled, and proper exception taken.

On cross-examination this witness admitted that he did not know what was in the water that would kill cattle; did not know how much salt a cow normally eats; did not know the salt content of the water, nor how much water the cow would be compelled to drink to get any known quantity of salt. The witness further said that he received his knowledge of the fact that salt water can kill a cow from a veterinarian, who used to live at Bunger, in a different oil field; that he based his statement on the Bunger oil field; and that he had made no comparison of waters of the two fields, and did not know whether they were the same kind of waters. He further testified that he had never had any cattle to drink any oil in the field in question. He further testified that there was no

live oil on the waters in the field; that he supposed that the cows that died in the Bunger field drank live oil from the slush pit; that there was only a scum of dead oil on Farmers' Branch.

It is quite plain to the writer that Smith's testimony, tending to show that the water was injurious to cattle, should have been excluded and that the trial court was not warranted in considering it: First, because the witness makes it plain that his opinion is based upon pure hearsay. The trial court, by giving weight to Smith's testimony, permits an unknown and unnamed veterinarian to testify in the trial of this cause. Second, because the witness Smith, a mere layman, who testifies that he is merely guessing at conclusions, and is without knowledge of facts on which to predicate his guesses, has shown himself wholly incompetent to testify that this water is, or was at any time, injurious to cattle. His testimony is without any probative force, and was the only testimony the trial court actually considered, if he acted upon the rulings made by him.

The trial court affirmatively found that appellees' cow did not die from drinking the water, and denied recovery for her loss.

Even if appellees have stated a cause of action in their petition, the trial court was without competent testimony to support the judgment rendered.

Appellee C. W. Johnson was permitted to testify over appellants' objection that appellants told him during the middle of the year 1932 that they did not want the witness to put any more cattle in the pasture, and that from such time until December, 1933, all cattle were kept out of the pasture, and on such date a few head of cattle were put in the pasture, when the witness wrote appellees the following letter:

"December 28, 1932.

"Nash & Windfohr,
    "Driver Hotel,
    "Graham, Texas.
"Dear Sirs:

"Last week I was forced to throw a few head of cattle down on the Woods pasture north of town. The water in the place is still extremely salty and this is the first time in over two years that we have put any live stock on this place due to the salt water.

"I am notifying you at this time so that you can take care of this salt water feature without damage. I am also here presenting grass bill to you of $100.00 per year for two years, towit: the period from December 15, 1931, to December 15, 1933.

"Please let me have your check for this $200.00 and if you care to make any suggestions relative to this stock instead of on this place, please advise me.
    "Yours truly,    C. W. Johnson, Jr."

In the majority opinion, it is stated that: "The court allowed appellees to prove that appellants had by contract paid appellees $100 for keeping appellees' cattle out of the pasture the year before those years named in the pleading. Assuming that this evidence was not justified by the pleading and should have been excluded, we think the error is not reversible. At most it shows an admission of liability for the previous year, which could have had no effect on the court."

The writer does not find any such evidence in the statement of facts, unless it is to be deduced from the above-quoted letter, and such letter merely demands payment of $100 per year, for two years, beginning with December 15, 1931, as a grass bill.

This letter was not admissible under any allegation found in the pleading, and tends to prove nothing on any theory of appellants' liability for commission of a tort. It does not tend to show any liability, or admission of liability, at any time, by appellants.

Its admission was error, and such a self-serving instrument should not have been received in evidence. The trial court evidently gave great weight to it in reaching the judgment he rendered.

The writer is of the opinion that the judgment of the trial court is without competent testimony and evidence to support it. Southern S. Co. v. Nalle & Co. (Tex. Com. App.) 242 S. W. 197.

There is yet another and equally potent reason why the judgment of the trial court cannot be sustained.

This suit is for the recovery of damages resulting from an alleged tort, and the doctrine of foreseeableness cannot be ignored.

Mr. Justice McClendon, speaking for the Supreme Court, in San Antonio & A. P. Ry. Co. v. Behne, 231 S. W. 354, 356, reviewed many leading cases and said: "The doctrine that foreseeableness or anticipation of injury is a necessary element to proximate cause is now so well established in this state that it is hardly necessary to do more than state the rule. * * * To say that an injury is the 'natural and probable consequence' of a given act is but saying in other words that it is such an injury as might 'reasonably have been anticipated, under ordinary circumstances, as the natural and probable result.

of that act.' * * * It will be seen that our Supreme Court has uniformly applied what might be termed a practical, common sense test, the test of common experience. The expression 'natural and probable result' has been used and interpreted to mean what should reasonably be anticipated in the light of common experience applied to the surrounding circumstances."

If it can be shown that the discharge from appellants' well has killed or made any of appellees' cattle sick, or that it has killed any of his trees, or destroyed any of his pasture lands, appellees could recover for such actual damages. But to say that appellees may withdraw their cattle from their pasture, on the theory that they are afraid to place their cattle therein, on account of salt water and oil running down the creek that runs through the pasture, and then sue appellants for the value of the pasture as a pasture, is straining the doctrine of foreseeableness to the breaking point. Appellees' petition does not state a cause of action against appellants.

The judgment of the trial court should be reversed and judgment here rendered for appellants.