**TRANS-AMERICAN VAN SERVICE, INC., Appellant,**

v.

**Nasser SHIRZAD, Appellee.**

No. 17563.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 7, 1980.

John L. Gamboa, Fort Worth, and Gene H. Edwards, Houston, for appellant.

Dyche & Wright, David T. Maddox, Houston, for appellee.

PEDEN, Justice.

Trans-American Van Service, Inc., appeals from a judgment awarding $18,280 to Nasser Shirzad for loss of and damage to household goods moved by Trans-American from Maryland to Texas. Trans-American complains that the trial court erred: 1) in entering judgment for $18,280 despite a limitation of liability contained in the bill of lading for the goods; 2) in admitting testimony it claims varied the terms of the bill of lading in violation of the parol evidence rule; 3) in entering judgment despite insufficient evidence that the goods had been lost or damaged while in appellant's possession; and 4) in entering judgment for $18,-280 despite an alleged conflict in jury findings as to damages.

The judgment of the trial court is affirmed.

When Mr. Shirzad moved from Bethesda, Maryland, to Houston in 1974, a representative of Trans-American went to his home and advised him that the move would cost around fifteen hundred dollars but did not say how the charge would be figured. Employees of Trans-American packed and loaded his possessions. Since not all of the contents of the house were to be moved, the Shirzads had set aside and designated those items which were to be included. Most of the boxes were packed by the movers, and Mr. Shirzad did not personally observe everything that was packed. Trans-American's employee prepared an inventory of the goods shipped, but it listed only the boxes and trunks and did not mention the individual items which they contained. The Shirzads made no written inventory of the articles to be moved.

Mr. Shirzad testified that he told Trans-American's driver that the shipment included several particularly valuable items, notably a handmade Persian rug. He said that he asked the driver what would happen if those items were lost and was told that they were insured.

Mr. Shirzad was asked to sign a bill of lading. It contained these provisions:

> Unless the shipper expressly releases the shipment to a value of 60 cents per pound per article, the carrier's maximum liability for loss and damage shall be either the lump sum value declared by the shipper or an amount equal to $1.25 for each pound of weight in the shipment, whichever is greater.
>
> The shipment will move subject to the rules and conditions of the carrier's tariff. Shipper hereby releases the entire shipment to a value not exceeding
>
> $_____
>
> (to be completed by person signing below) Notice: the shipper signing this contract must insert in the space above, in his own handwriting, either his declaration of the actual value of the shipment, or the words "60 cents per pound per article." Otherwise the shipment will be deemed released to a maximum value equal to $1.25 times the weight of the shipment in pounds.

Although he did not read the limitation on liability, Mr. Shirzad signed his name immediately below the quoted provision. He did not, however, fill in the release value, which was later completed by persons unknown, in the amount of sixty cents per pound.

Twelve days after the goods were loaded at Mr. Shirzad's Maryland residence, they were delivered to a warehouse of his choosing in Houston. Neither he nor anyone representing him was present at the time the goods were unloaded. He said the warehouse was locked with a new lock and the only set of keys delivered to his secretary. The next day, Mr. Shirzad went to the warehouse and counted the boxes to be sure that all were there. Several days later, when he opened some of them, he discovered that some items were missing and that several of the boxes appeared to have been previously opened and re-closed with tape of a different color.

The Shirzads subsequently discovered that other items were missing from the boxes. Mr. Shirzad then returned to their Maryland home to see if perhaps they had been left there, but he was unable to find them.

In its first point of error, Trans-American complains that the trial court erred in entering judgment for Mr. Shirzad in the amount of $18,280 because of the limitation of liability contained in the bill of lading.

■■■ According to both the common law and the relevant section of the Interstate Commerce Act, 49 U.S.C.A. § 20(11), a common carrier is ordinarily liable for the full amount of actual loss, damage, or injury to property it carries, notwithstanding any attempted limitation of liability or limitation on the amount of recovery. However, a statutory exception allows the carrier to limit its liability in certain cases to an amount not exceeding the stated value of the property. This exception applies:

to property, except ordinary livestock, received for transportation concerning which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall . . . limit liability and recovery to an amount not exceeding the value so declared or released . . . 49 U.S.C.A. § 20(11).

Thus, if the carrier maintains rates which are determined according to the stated value of the shipment, with the rate increasing as the amount of the property risk increases, it can through written agreement limit its liability to the amount declared. *Nationwide Horse Carriers, Inc. v. Johnston*, 519 S.W.2d 163 (Tex.Civ.App.1974, writ ref. n. r. e.); *Wadel v. American Airlines*, 269 S.W.2d 855 (Tex.Civ.App.1954, writ dism. by agr.); *Gulf, Colorado & Santa Fe Ry. Co. v. McCandless*, 190 S.W.2d 185 (Tex.Civ.App. 1945, no writ).

■ There is no evidence in the record to indicate that the household goods shipped by Mr. Shirzad constitute property covered by the exception. Moreover, the only indication that Trans-American has on file with the ICC rates which were applicable to these goods and which were graduated according to the value of the shipment comes from an allegation in its pleadings to that effect. Trans-American put on no evidence at trial, and it has not met its burden of showing that it is entitled to claim the exception to full liability. See *Anton v. Greyhound Van Lines*, 591 F.2d 103, 108–109 (1st Cir. 1978).

■ In any event, even assuming that appropriate and applicable rates were filed, Trans-American's attempt to limit its liability must fail. An essential prerequisite to the validity of such an attempt is that the shipper have been given "a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge." *New York, N. H. & Hartford R. Co. v. Nothnagle*, 346 U.S. 128, 135, 73 S.Ct. 986, 990, 97 L.Ed. 1500 (1953); *Nationwide Horse Carriers, Inc. v. Johnston*, supra. Trans-American acknowledges that the shipper must be given that choice, but it relies on a line of cases which have held that shippers are charged with notice of the terms and conditions contained in the filed tariff schedules. *Gulf, Colorado & Santa Fe Ry. Co. v. McCandless*, supra; *Cray v. Pennsylvania Greyhound Lines*, 177 Pa.Super. 275, 110 A.2d 892 (1955); *Anton v. Greyhound Van Lines, Inc.*, supra. It argues that the shipper need not actually be told that he has a choice of rates since he is presumed to know the schedules.

Since Trans-American has failed to prove that any such tariffs are actually on file, we cannot presume that Mr. Shirzad has notice of their contents. In addition, only one of the three cases cited by appellant, *Gulf, Colorado & Santa Fe Ry. Co. v. McCandless*, goes so far as to say that in the absence of other forms of notice the shipper still need not be expressly informed that he has a choice. The court in the *Cray* case held that the carrier had provided the required opportunity to choose by referring to the tariff regulations on its transportation tickets and baggage checks and by posting prominent notices of the limitation of its liability in conspicuous locations on its premises. In our case no such alternate steps were taken to notify Mr. Shirzad of his right. The court in *Anton*, after stating the proposition for which it was cited above, went on to say:

> However, a carrier in order properly to limit its liability must do more than merely show that it maintained appropriate tariff schedules with the ICC . . . . [A] carrier cannot limit liability by implication. There must be an absolute, deliberate and well-informed choice by the shipper. 591 F.2d 103, 108 (footnotes and citations omitted).

Beginning with the statement in *Nothnagle* concerning the "fair opportunity to choose," the federal cases appear to have retreated from the harsher rule enunciated in earlier cases that the shipper is bound by

the terms of limitation of liability contained in documents or schedules which he might never have seen. The courts now require "reasonable notice" to the shipper, *Chandler v. Aero Mayflower Transit Company,* 374 F.2d 129, 137 (4th Cir. 1967), and "an absolute, deliberate and well-informed choice." *Anton v. Greyhound Van Lines,* supra, 591 F.2d at 108.

The court in *Chandler* makes the further point that the Act specifically requires that the released value be "agreed upon in writing," stating:

> Congress no doubt used these words to indicate that a shipper should agree in the same sense that one agrees or assents to enter into a contractual obligation. [Citations omitted] And such assent is effective only if given after "a fair opportunity to choose between higher or lower liability by paying a corresponding greater or lesser charge." [Citations omitted]

> In determining whether there was "agreement" upon a released value courts are, therefore, to apply principles of contract law, and more particularly in the present case the law as it relates to standardized form contracts such as those relied upon by the carrier here.

> . . . [A]rrangements limiting liability contravene a strong public policy expressed in the common law, come within a carefully defined exception to the general thrust of Section 20(11) of the Interstate Commerce Act placing on the carrier absolute liability for damage, and are in operation attended by characteristics of an adhesion contract. 374 F.2d 129, 135.

In the instant case, there is no evidence that Mr. Shirzad was ever given a choice of rates or told that he might obtain more protection for his property by paying a higher rate. On the contrary, his uncontradicted testimony is that he was told nothing at all about how the rates were charged. He did not declare in writing a specific value for his goods, nor did he agree in writing to a released value. The evidence is uncontradicted that the actual limitation of liability contained on the face of the bill of lading ("60 cents/per/lb/per/article") was written by someone other than Mr. Shirzad, in direct violation of the terms written directly below it. Trans-American failed to comply with the provisions of the Interstate Commerce Act on limitation of liability, as construed by the above cited cases. See also *Brannon v. Smith Dray Line & Storage Company,* 456 F.2d 260 (6th Cir. 1972); *Bauer v. Jackson,* 15 Cal.App.3d 358, 93 Cal.Rptr. 43 (1971).

■ There is yet a third reason to hold Trans-American liable for the full amount of damages to Mr. Shirzad's property. In answer to special issues submitted, the jury found 1) that Trans-American had represented to Mr. Shirzad that he would not need to obtain insurance on his property because it would be fully protected in case of loss or damage in the move, 2) that the representation was false when made, 3) that it was made with the intention of not fulfilling it, 4) that it was made in order to induce Mr. Shirzad to sign the bill of lading, and 5) that it was a material inducement to his signature. Whatever agreement on liability Mr. Shirzad might be said to have reached in signing the bill of lading was vitiated by the fraudulent circumstances under which he was induced to sign. *Chandler v. Aero Mayflower Transit Company,* supra; *Mitchell v. Union Pacific Railroad Co.,* 188 F.Supp. 869 (S.D.Calif.1960).

Trans-American next complains that the admission of Mr. Shirzad's testimony regarding what the driver told him about insurance was a violation of the parol evidence rule, since the testimony tended to vary the terms of the written bill of lading. We do not agree.

■ The parol evidence rule does not exclude evidence introduced to show that a supposed written contract was induced by fraud. 2 McCormick & Ray, Texas Law of Evidence § 1661. Trans-American concedes this point but argues that in this case the driver's statements are not sufficient to establish fraud. In *Stone v. Lawyers Title Insurance Corporation,* 554 S.W.2d 183, 185 (1977), the Supreme Court of Texas recapit-

ulated the essential elements of actionable fraud:

(1) that a material misrepresentation was made; (2) that it was false; (3) that when the speaker made it he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance on it; (6) that he thereby suffered injury.

The jury in our case found, in effect, each of those elements. We hold that the testimony was admissible.

In its points of error three through eight, Trans-American complains that the evidence adduced at trial was insufficient to support the jury findings that the fourteen named items were delivered by Mr. Shirzad to Trans-American in good condition in Maryland, that twelve of them were not delivered to him in Houston, and that two of them were delivered in a damaged condition. In its ninth point of error, Trans-American asserts that it was error to enter judgment for Mr. Shirzad because Trans-American's responsibility for the goods ended when they were unloaded at the warehouse in Houston, and there was no evidence that the boxes were not tampered with after delivery to the warehouse.

■ Mr. Shirzad did not personally observe each and every item that the movers packed and loaded, so he could not offer direct, affirmative evidence that each item now claimed to be missing or damaged was, to his personal knowledge, handed over to Trans-American in Maryland. Nevertheless, he did offer an abundance of indirect and circumstantial evidence from which the jury was entitled to conclude that delivery was made.

Mr. Shirzad testified that he and his family went through their Maryland home selecting the items which they wished to ship to Houston and setting these aside in designated areas which they showed to the movers. Although he did not make a written inventory of the contents of each box that he and his family or the movers packed, he did remember details concerning the items in question, such as how or where they were packed and who packed them. He stated unequivocally that each of the items in question was in good condition when it was given to Trans-American's employees and that all of the items he claimed to have been lost or damaged were turned over to Trans-American in Maryland.

The latter statement is obviously an inference which Mr. Shirzad drew from the facts about which he had personal knowledge. It was, however, one which he and the jurors were entitled to draw from the evidence presented. Trans-American rested without putting on any evidence at all. There was nothing to suggest that the movers did not load all of the items which the Shirzads showed them. We hold that the jury was entitled to conclude from the uncontradicted evidence—and from the inferences properly to be drawn from it—that the fourteen items in question were delivered to Trans-American for shipment.

■ Mr. Shirzad testified unequivocally and without contradiction as to the twelve items missing from the boxes he opened in the Houston warehouse and the two that were damaged. Trans-American does not contend that there was no such loss or damage. Its position is rather that it cannot be held liable because there is no evidence that the boxes were not tampered with after delivery to the warehouse.

Trans-American had the boxes in its possession for twelve days while they were being transported from Maryland to Houston. There is no evidence regarding what happened to them during that time. Mr. Shirzad testified that on the morning after delivery his secretary received the keys to the warehouse from the driver, immediately gave them to him, and he went to count the boxes. Four or five days later, when he began opening them, he discovered the loss. He said the lock on the warehouse was a new one, and he knew he had the only two keys to it because only two customarily come with the lock in a plastic bag.

Under the circumstances, the jury was entitled to conclude that the items in question were lost or damaged before delivery to the warehouse. See *Red Ball Motor Freight, Inc. v. Dean*, 549 S.W.2d 41 (Tex. Civ.App.1977, writ dism.).

In its tenth point of error, Trans-American complains of what it alleges is a conflict in the jury findings on damages. We have seen that in response to the first five special issues the jury found elements of fraud. In answer to the sixth issue, it fixed at $7,500 the amount of Shirzad's damages directly and proximately caused by failure to fulfill the representation asked about in Special Issue 1.

The jury decided in answer to Issue 9 that Shirzad would be compensated for the loss of a Kurdestan Persian carpet by payment of $14,000, and it also itemized his other losses, placing the entire value of lost goods at $18,150. The jury found that it would cost $130 to compensate him for damaged articles (Issue 11).

Trans-American contends that the answer to Special Issue No. 6 is in conflict with the answers to Special Issues Nos. 9 and 11 and that the trial court should have given effect to the lower damage amount, $7,500.

An appellate court must presume "that the jurors did not intentionally make conflicting findings, and if a reasonable interpretation will avoid the conflict, the court should adopt it." 3 McDonald, Texas Civil Practice 607, § 15.06.2. In this case, such a reasonable interpretation is readily available.

In addition to the cause of action for loss of and damage to his goods while in transit, Mr. Shirzad pleaded two additional causes of action based on the fraudulent representation which the jury ultimately found to have been made. The $7,500 found in answer to Special Issue No. 6 was the amount at which the jury fixed the damages Mr. Shirzad suffered as a result of that fraud. The judgment entered did not include that amount, and we consider that Mr. Shirzad's claim for recovery under the causes of action for fraud was disposed of by implication. ". . . [W]hen a party abandons all or a separable part of a claim for affirmative relief, a judgment disregarding the abandoned portion will not be fatally defective . . ." 4 McDonald, Texas Civil Practice § 17.10.4. In any event, Trans-American cannot complain of the exclusion.

We consider that the findings were not in conflict and that the trial judge entered a proper judgment.

Affirmed.

EVANS and WARREN, JJ., participated.