**PRIME PRODUCTS, INC., Appellant,**

v.

**CON–WAY TRANSPORTATION SERVICES, INC., Appellee.**

**No. 01–01–01209–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 6, 2003.

Donald G. Wilhelm, Wilhelm Law Firm, Houston, for Appellant.

Michelle Marie Samadany–Farme, Eric R. Benton, Lorance & Thompson, Houston, for Appellee.

Panel consists of Chief Justice RADACK, and Justices NUCHIA and HANKS.

## OPINION

GEORGE C. HANKS, JR. Justice.

This is an appeal from a partial summary judgment which awarded appellant, Prime Products, Inc., $180 for damage to property that occurred while the property was being shipped by appellee, Con-way Transportation Services, Inc. In its sole point of error, Prime argues that the trial court erred by limiting damages to $180. We affirm.

### Background

Prime Products is the owner of an 1,800 pound mold used to make parts for the drinkware industry. Prime entered into a business relationship with a manufacturing company, S.S.I. Plastics, Inc., in which S.S.I. produced parts for drinkware using Prime's mold, and Prime paid S.S.I. a fee for production. When the mold needed repairs in December 1997, S.S.I. arranged for the mold to be repaired on the premises of Burco Precision Products, Inc. After the repairs were completed, S.S.I. arranged for Con-way to pick the mold up from Burco's facility and return it to S.S.I.'s facility.

The Con-way driver arrived at Burco and loaded the mold onto his truck. The driver asked Janelle Burch, the officer manager of Burco, to fill out and sign a blank bill of lading for the shipment of the mold back to S.S.I. The bill of lading, filled out by Burch, stated that the mold was to be shipped collect to S.S.I., that the shipment was "per Richard Burch," and that the mold weighed 800 pounds. A handwritten notation briefly described the mold as a "Cup Liner Mold" with an internal inventory number and the comment "Prime Products, Inc."

The bill of lading contained three pertinent provisions:

NOTE—Where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property. The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding $_____ per _____.

. . .

Carrier Liability: Shipments valued at more than $25.00 per pound are of extraordinary value. Carrier's maximum liability is $25.00 per pound per package subject to $250,000.00 maximum total liability per shipment, unless the Shipper declares excess value on the Bill of Lading, requests excess liability coverage and pays an additional charge. *The agreed value on household goods, used machinery or personal effects does not exceed ten cents per pound, unless otherwise specified.*

. . .

Shipper hereby certifies that *he is familiar with all the terms and conditions of the bill of lading, governing tariffs, pricing schedules,* rules, and classifications; *the said terms and conditions are hereby agreed to by the shipper* and accepted for himself and his assigns. (emphasis added).

Burch signed the bill of lading but she did not request excess liability coverage, nor did she specify a value for the mold in the space provided.

The Con-way driver did not close the back door of the truck before driving away from the Burco facility. When the truck drove away from Burco, the mold fell out of the truck and landed in the road. As it lay in the roadway, the mold was hit by a pick-up truck and sustained damage. The Con-way driver was informed by the driver of another car that the mold had fallen out of the truck. He returned to pick it up, and the mold was eventually returned to the Con-way facility, and then brought back to S.S.I. in its damaged condition.

Prime brought suit against S.S.I., Burco, and Con-way, alleging various causes of action, including negligence, gross negligence, and breach of contract. Prime nonsuited Burco on November 16, 1999. Conway, moved for partial summary judgment based on the limitation of liability contained in the bill of lading signed by Janelle Burch. Con-way argued that, because a value for the mold had not been declared on the bill of lading, the default liability provisions on the bill of lading applied and limited any recovery by Prime to 10 cents per pound of weight. The trial court initially denied, then granted, Con-way's motion for partial summary judgment and limited Prime's recovery to $180.00, pursuant to the stated liability contained in the bill of lading of 10 cents per pound for used machinery. The trial court also eventually granted summary judgment in favor of S.S.I. and severed Prime's claims against Con-way and S.S.I. The final judgment signed by the trial court on November 27, 2001 awarded Prime damages against Con-way but, in-

corporating the earlier partial summary judgment, limited the damages recovered by Prime to $180.00. Con-way did not appeal the judgment against it.

## Discussion

In its sole point of error, Prime argues that the trial court erred by granting Con-way's motion for partial summary judgment and limiting Prime's damages to $180.00. Prime argues that this limitation was improper because (1) Prime was not a party to the bill of lading; (2) the language on the bill of lading that limited Con-way's liability in the absence of a declared value was not conspicuous; (3) Prime was not afforded an opportunity, as the owner of the mold, to declare a higher value for the mold on the bill of lading; and (4) the limitation of damages is against public policy.

We review the appeal under the usual standards of review applicable to motions for summary judgment. In deciding whether there is a fact issue raised to preclude summary judgment, we accept all evidence favorable to the nonmovant as true, indulge the nonmovant with every favorable reasonable inference, and resolve any doubt in the nonmovant's favor. *Nixon v. Mr. Prop. Mgmt. Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985). We disregard all conflicts in the evidence and accept as true all evidence supporting the nonmovant. *Fought v. Solce,* 821 S.W.2d 218, 219 (Tex.App.—Houston [1st Dist.] 1991, writ denied). All doubts as to the existence of a genuine issue of material fact are resolved against the movant. *Id.*

■ The trial court did not err by granting Con-way's motion for partial summary judgment because, even accepting all of Prime's factual assertions as true, Con-way established that it was entitled to a limitation of its liability as a matter of law. Under Texas law, the duties and liability of a carrier and the remedies against the carrier are the same as under the common law, and a carrier for hire may not limit its common-law liability "unless the limitation is in conspicuous writing in a written arrangement for transportation." Tex. Transp. Code Ann. § 5.001(a) (Vernon 2001). Damages for a carrier's violation of its duty of care may be limited to a specified amount by such conspicuous contractual provisions if: (1) the carrier's rates are dependent upon the value of the item shipped; and (2) the consignor is afforded an opportunity to declare a higher value for the item, either by virtue of alternative rates in the carrier's tariff or by being informed of such an opportunity. Tex. Bus. & Com.Code Ann. § 7.309(b) (Vernon 2001).

As a matter of law, Con-way was entitled to the partial summary judgment limiting its liability because (1) the liability limitation language on the bill of lading was conspicuous; (2) Con-way's rates were dependent on the value of the cargo shipped; and (3) the consignor, Janelle Burch of Burco, was given an opportunity to declare a higher value, but did not. In support of its motion for partial summary judgment, Con-way provided the trial court with uncontroverted evidence which established the following: Con-way is a common carrier which, pursuant to Texas Transportation Code section 5.001(a), has limited its liability by the publication of tariffs and by noting such limitations on the face of its bills of lading; the rates which Con-way charges, as contained in its published tariffs, vary according to the value of the item shipped; and the bill of lading in question was signed by Janelle Burch, and Burch was afforded an opportunity to fill in a value for the mold but did not, thus triggering the default release value for a shipment of used machinery.

■ In response to Con-way's motion for partial summary judgment, Prime argued that the language on the bill of lading

that limited Con-way's liability to 10 cents per pound was not conspicuous. The conspicuousness of a liability release is a question of law to be determined by the court. "Conspicuousness" requires that the release be written in such a manner that a reasonable person against whom it is to operate should have seen it. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 507–09 (Tex.1993). In *Ranger Ins. Co. v. American Intern. Specialty Lines Ins. Co.*, this Court, relying on *Dresser*, held that the indemnity provisions on the front of a drilling contract were sufficiently conspicuous when all the clauses were contained on the front of the contract, the provisions were clearly labeled, and the language used was clear. 78 S.W.3d 659, 665 (Tex.App.—Houston [1st Dist.] 2002, no pet.). The bill of lading signed by Janelle Burch contained liability limitations which were sufficiently conspicuous to put a reasonable person on notice—the spacing, layout and typeface of the bill of lading make the language in which the limitations are contained reasonably noticeable, all three relevant provisions are contained on the face of the bill of lading, and the language used is sufficiently clear. We conclude that Prime did not present the trial court with any evidence that gave rise to a material fact precluding a partial summary judgment limiting Con-way's liability.

In both its brief on appeal and at trial, Prime argues that, because it was not a party to the bill of lading, it should not be bound by the bill of lading's limitation of liability. In support of its argument, Prime relies on *Nationwide Horse Carriers, Inc. v. Johnston*, 519 S.W.2d 163 (Tex. Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). In *Nationwide*, this Court upheld an award in excess of $25,000 for injuries sustained by a pregnant mare during transport, despite a provision on the bill of lading that limited the carrier's damages to the horse's declared value of $200. The mare had been bought at auction in Florida and transport from the auction facility was arranged by the buyers' agent. With the agent's permission, instead of directly shipping the mare from Florida to Texas, the transport company brought the mare to a local stables to be boarded until a full truckload of horses could be arranged for shipment to Texas. When the time came to ship the mare to Texas, the manager of the boarding stables signed a bill of lading stating that the value of the mare was $200.00. In upholding the jury's award of damages to the buyers in excess of the value stated on the bill of lading, this Court reasoned that "the jury could have reasonably concluded that [the buyers' agent] had not arranged transportation 'in accordance with the bill of lading' and that [the stable manager] had acted entirely without the authority of either [the buyers or their agent] in signing the bill of lading as shipper." 519 S.W.2d at 166. The facts of *Nationwide* are distinguishable from the facts presented here: in *Nationwide*, because the buyers' agent and the shipper's agent had reached an agreement before the shipment commenced, this Court agreed that the subsequent bill of lading signed by an unauthorized third party was not binding upon the buyers. Here, although some evidence was presented via affidavits submitted by Prime that Prime's owner had discussed with Burco's owner what repairs were to be made to the mold, no evidence was produced to show that Prime's owner had ever discussed terms of shipping with anyone at Burco, nor was any evidence produced to show that Prime's owner communicated with the Con-way driver or any agent for Con-way about the shipment of the mold from Burco to S.S.I. *Nationwide*, therefore, is inapposite here.

Prime further argues that its recovery should not be limited by the bill of lading because it was not afforded, as the owner of the mold, an opportunity to

choose between rates and to declare a higher value for the mold. The bill of lading is a contract between the shipper, Burco, and the carrier, Con-way. Texas Business and Commerce Code section 7.309(b) requires that Burco be given an opportunity to declare an alternative value on the bill of lading. *See Banos v. Eckerd Corp.,* 997 F.Supp. 756 (E.D.La.1998) (applying similar provisions of the Interstate Commerce Act, and holding that customer who delivered family photographs to a retail store, and whose photographs were then shipped pursuant to a bill of lading to a photography laboratory for processing, stood in the shoes of the retail store shipper and could not recover any damages for the loss of the photographs beyond those permitted by the bill of lading). Prime did not contest Con-way's assertion that Janelle Burch had been given an opportunity on the bill of lading to fill in an alternative value for the mold.

### Conclusion

Accordingly, we overrule Prime's sole point of error and affirm the judgment of the trial court.